*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALISHA MERCURIO,

        Plaintiff-Appellant,

v

HUNTINGTON NATIONAL BANK and DANIEL
J. LEFEVRE,

        Defendants-Appellees,

and

JENNIFER R. GRATZ-PIERSON, JENNIFER R.
GRATZ-PIERSON TRUST, PIERSON GRATZ
TRUST, SCOTT BREAZEALE, and JOE NADAR,

        Defendants.

FOR PUBLICATION
August 3, 2023
9:05 a.m.

No. 361855
Oakland Circuit Court
LC No. 2021-187510-CB

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

MARKEY, J.

In this action alleging a fraudulently obtained personal guaranty and investment, plaintiff, Alisha Mercurio, appeals by right the trial court's order granting summary disposition in favor of defendants, Huntington National Bank (the bank) and its Vice-President of Special Assets Daniel J. LeFevre. Pursuant to MCR 2.116(C)(8), the trial court summarily dismissed plaintiff's claims of silent fraud, civil conspiracy, and respondeat superior, along with her requests for declaratory relief.[1] We affirm.

---

[1] A consent judgment was subsequently entered with respect to remaining claims that were alleged against the other defendants.

-1-

## I. OVERVIEW – ALLEGATIONS AND PROCEDURAL BACKGROUND

Because this case implicates MCR 2.116(C)(8), which provides for summary disposition when a party "has failed to state a claim on which relief can be granted[,]" our focus is on the allegations in plaintiff's second amended complaint (the complaint). For purposes of MCR 2.116(C)(8), the allegations in the complaint must be accepted as true. *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 508; 968 NW2d 482 (2021). Accordingly, although the following discussion of events is framed in a factual fashion, at this stage of the litigation we are solely addressing allegations made by plaintiff in the complaint.

In 2017, defendants, Jennifer Gratz-Pierson, Scott Breazeale, and Joe Nader, formed Hardcore Meals, LLC, a catering business, and a related entity, HCMeals Properties, LLC, which held certain real property for the catering business. Later in 2017, the bank loaned HCMeals $625,000 that was secured by a mortgage on the real property, and the bank subsequently loaned $50,000 to Hardcore Meals in 2018. The companies were insolvent in 2018, 2019, and 2020, and they were never profitable. In 2019, the companies were not paying their debts, and late charges were assessed by the bank throughout 2019 with respect to the larger loan. The companies did not pay their real estate taxes for 2017, 2018, and 2019. In September 2019, the bank sent HCMeals a notice of default, which was signed by LeFevre. HCMeals failed to make its monthly loan payments for October, November, and December 2019. In October 2019, HCMeals's credit was downgraded by the bank, and the bank designated the loan to HCMeals as "troubled debt restructuring." Accordingly, the companies were in dire economic straits by the end of 2019 and going into 2020.

In the fall of 2019, Gratz-Pierson asked plaintiff to invest in the companies. Gratz-Pierson advised plaintiff, who had been her good friend since the sixth grade, that the companies were "in great shape" and "growing rapidly." Although no formal agreement was executed, Gratz-Pierson and plaintiff negotiated terms for plaintiff's investment in the companies, including granting plaintiff a 31% ownership interest in the companies in exchange for an $80,000 investment and an agreement to take on 50% of the companies' outstanding debt. On request of HCMeals, the bank in December 2019 showed a willingness to temporarily defer or forbear the missed fall 2019 payments under a "Change of Terms Agreement" (COT agreement), but only if the new investor, plaintiff, executed a personal guaranty. The companies would also have to resume making loan payments on January 5, 2020. In early January 2020, LeFevre and Gratz-Pierson worked out the arrangements regarding the COT agreement, which Gratz-Pierson executed on behalf of the companies and LeFevre signed on behalf of the bank. The COT agreement had a preprinted date of January 8, 2020. Plaintiff alleged that Gratz-Pierson executed the COT agreement on or about January 8, 2020.

As of January 15, 2020, the required January loan payment of $24,370 was past due, and the companies had no money in their bank accounts. On January 16, 2020, plaintiff met LeFevre at a Farmington Hills Starbucks where they "discussed the companies" and plaintiff's investment, and "at which time [LeFevre] spoke very highly about the Companies and how talented Jennifer, Scott and Joe were." At that time, plaintiff signed a personal commercial guaranty with respect to

the loans.[2]  We note that the guaranty had a preprinted date of January 8, 2020, which was the same date that was on the COT agreement.  On January 23, 2020, plaintiff deposited $73,659.36 into Hardcore Meals's bank account and discovered that the account was in the negative.[3]  This was the first indication to plaintiff that the companies were in financial trouble.

In an unsolicited e-mail sent by LeFevre to plaintiff on January 27, 2020, there were attachments showing that in 2019 the companies' credit had been downgraded, that the personal guaranty had been required because of the credit issues, and that the January 2020 payment was past due.  According to plaintiff, only after she had executed the personal guaranty and made her investment did she learn of the 2019 loan late fees, the companies' failures in general to pay debts such as three years of real estate taxes, the fall 2019 non-payment of loans over a three-month span, the September 2019 loan default, the three years of insolvency status relative to the companies, the downgrade in credit status, the COT agreement, the failure to make the January 2020 payment, and the overall collusion to obtain her money and guaranty.  The gist of plaintiff's position was that defendants, including and especially Gratz-Pierson and LeFevre, wrongfully concealed and failed to disclose the true financial status and circumstances of the companies despite numerous communications and interactions in which the opportunity existed to share accurate information with plaintiff.

Plaintiff then commenced the instant litigation.  In her complaint, plaintiff sought declaratory relief in Count I.  She requested that the trial court declare the personal guaranty unenforceable.  In support of the request, plaintiff alleged that there was a lack of legally-sufficient consideration in exchange for her guaranty on loans that were already in default.  Plaintiff additionally contended that the guaranty was unenforceable because it was procedurally and substantively unconscionable.  She asserted that the actions of the bank and LeFevre constituted unconscionable business practices under MCL 440.2302 and the common law.  Count II of the complaint alleged a claim of fraud-in-the-inducement against Gratz-Pierson.  In Count III, plaintiff alleged a claim of silent fraud/fraudulent concealment against LeFevre for failing to disclose the true state of the companies' financial affairs and all the circumstances and events that demonstrated that the companies had essentially collapsed.  Plaintiff maintained that LeFevre had a legal, contractual, and equitable duty to disclose the information.  Plaintiff further alleged that 13 CFR 120.140(f) was applicable and imposed a duty on LeFevre to act with integrity and honesty, considering that the loans were guaranteed by the United States Small Business Administration (SBA).  Plaintiff additionally relied on the law of surety, as reflected in Restatements, to establish a duty on LeFevre's part to disclose the companies' dire financial straits.

In Count IV of the complaint, plaintiff again sought declaratory relief, requesting the trial court to declare that the bank and LeFevre owed and breached a legal duty to plaintiff under 13 CFR 120.140(f), which prohibited them from "[e]ngag[ing] in conduct reflecting a lack of business integrity or honesty."  Count V of the complaint alleged a claim of silent fraud/fraudulent concealment against the non-bank defendants.  In Count VI of the complaint, plaintiff alleged a

---

[2] Plaintiff attached the COT agreement and the personal guaranty to the complaint.

[3] Throughout the complaint, plaintiff speaks of her $80,000 investment, but it is not clear how the full $80,000 was invested after consideration of the $73,659.36 deposit.

claim of civil conspiracy against all defendants. Plaintiff asserted that "[d]efendants illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of defrauding [plaintiff] into signing the [g]uaranty and investing money in the [c]ompanies for the benefit of the [d]efendants." In Count VII, plaintiff alleged a claim of vicarious liability/respondeat superior, contending that the bank was liable for the wrongful acts committed by LeFevre. Finally, in Count VIII of the complaint, plaintiff alleged that the non-bank defendants violated the Michigan Limited Liability Company Act, MCL 450.4101 *et seq.*

Subsequently, the bank and LeFevre (hereafter "defendants") moved for summary disposition under MCR 2.116(C)(8) with respect to the claims pertaining to them. Plaintiff responded to the motion and also requested that judgment be entered in her favor under MCR 2.116(I)(2). Defendants filed a reply brief. We shall discuss the parties' arguments in the analysis section of this opinion to the extent that they are relevant in resolving this appeal. The trial court dispensed with oral argument, and it issued an order granting defendants' motion for summary disposition under MCR 2.116(C)(8).

With respect to Count I and plaintiff's request that the trial court declare the personal guaranty unenforceable based on lack of consideration and unconscionability, the trial court ruled that plaintiff failed to state a claim because her injuries had already occurred requiring no guidance relative to future conduct. Therefore, according to the court, there was no "actual controversy" as necessary to invoke a claim for declaratory relief under MCR 2.605. The trial court reached the same exact conclusion in regard to Count IV in which plaintiff sought a declaration that the bank and LeFevre owed and breached a legal duty to plaintiff under 13 CFR 120.140(f). On Count IV, the trial court additionally found that plaintiff had failed to cite any legal authority in support of the claim, thereby abandoning the issue.

With respect to Count III and plaintiff's claim of silent fraud/fraudulent concealment against LeFevre for failure to disclose the true state of the companies' financial affairs, the trial court determined that she failed to state a claim because LeFevre owed no legal or equitable duty to plaintiff. In regard to Count VI and plaintiff's claim of civil conspiracy, the trial court found that the issue had been abandoned because plaintiff failed to cite any supporting legal authority in responding to defendants' motion for summary disposition. The trial court further ruled that plaintiff failed to state a claim for civil conspiracy because there was no separate actionable or viable underlying tort. Finally, with respect to Count VII and plaintiff's claim of vicarious liability/respondeat superior against the bank, the trial court determined, once again, that the claim was abandoned because plaintiff had failed to cite any supporting legal authority in countering the motion for summary disposition. Moreover, the court found that the claim failed because plaintiff did not state a cause of action given that there was no actionable negligence committed by LeFevre, the bank's employee. This appeal ensued.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND PRINCIPLES GOVERNING MCR 2.116(C)(8)

"We review de novo a trial court's decision on a motion for summary disposition." *Esurance Prop*, 507 Mich at 508. "Whether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d

413 (2013). "We also review de novo a trial court's determination whether an actual controversy exists" for purposes of a request for declaratory relief under MCR 2.605. *Kircher v Ypsilanti*, 269 Mich App 224, 226-227; 712 NW2d 738 (2005).

A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a plaintiff's claim as based on an examination of the factual allegations contained in the complaint. *Esurance Prop*, 507 Mich at 508. A trial court may only consider the pleadings when rendering a decision under MCR 2.116(C)(8). *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). As noted earlier, the trial court must accept as true all factual allegations when ruling on the motion. *Esurance Prop*, 507 Mich at 508. A court may only grant a motion under MCR 2.116(C)(8) when a claim is so clearly unenforceable that no factual development of the case could possibly justify recovery by the plaintiff. *Id.*

## B. DISCUSSION AND RESOLUTION

### 1. INITIAL OBSERVATIONS

From a broad perspective, plaintiff's case against the bank and LeFevre seeks two remedies—being made whole on a harm that she suffered by investing $80,000 in companies that were, allegedly unbeknownst to her, on the verge of financial collapse and, second, preventing a potential future harm in connection with any attempt by the bank to collect on the personal guaranty.[4] The latter concern has now come to fruition by way of a separate collections action commenced by the bank against plaintiff. With the goal of obtaining the two remedies, return of her $80,000 and a declaration that the guaranty is unenforceable, plaintiff relies on two tort theories, silent fraud or fraudulent concealment[5] and civil conspiracy. And in relation to the guaranty only, plaintiff additionally argues lack of consideration and unconscionability as part of her request for declaratory relief. The claim of vicarious liability or respondeat superior against the bank is wholly dependent on whether LeFevre committed a tort. See *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734; 892 NW2d 442 (2016) (under the theory of respondeat superior, an employer may be held liable for an employee's negligent acts if the employee was acting within the scope of his or her employment). Although the litigation is procedurally a good fit with respect to a compensatory-damages remedy relative to an action on the $80,000 lost investment, the issue regarding the enforceability of the guaranty seems more suitable as an argument to be raised in defense of a collections action. That said, plaintiff was not legally barred from commencing the declaratory judgment action in regard to the enforceability of the guaranty.

---

[4] We acknowledge that plaintiff requested no less than $755,000 in damages on her tort claims, but this amount essentially encompasses the $80,000 investment and the amount she would owe if the personal guaranty were enforced.

[5] Silent fraud is also referred to or known as fraud by nondisclosure or fraudulent concealment. *M & D, Inc v W B McConkey*, 231 Mich App 22, 28; 585 NW2d 33 (1998). For the remainder of this opinion, we shall use the label "silent fraud."

## 2. DECLARATORY RELIEF

Counts I and IV of plaintiff's complaint requested declaratory relief. In Count I, plaintiff alleged that the guaranty should be declared unenforceable because there was a lack of consideration, and it was unconscionable. Count IV sought a declaration that the bank and LeFevre owed and breached a legal duty to plaintiff under 13 CFR 120.140(f). The trial court summarily dismissed the two counts on the basis that they concerned past injuries and did not seek guidance with respect to future conduct; therefore, there was no "actual controversy" as necessary to obtain declaratory relief under MCR 2.605.

MCR 2.605 governs actions seeking a declaratory judgment. And MCR 2.605(A)(1) provides that "[i]n a case of *actual controversy* within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." (Emphasis added.) "When there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017). "An actual controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011). A plaintiff must plead and prove facts that indicate an adverse interest necessitating a sharpening of the issues raised. *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000). When the injury a plaintiff seeks to prevent is merely hypothetical, a case of actual controversy does not exist. *Id.*

With respect to Count I, contrary to the trial court's ruling, the enforceability of the guaranty did not concern a past injury at the time that the court rendered its ruling: There was yet to be an injury in relation to the guaranty.[6] In our view, an "actual controversy" necessitating guidance as to future conduct would have existed at the time the suit was commenced if the loans were in default, which was the case, and if the bank were making overtures to plaintiff about collecting on the defaulted loans pursuant to the personal guaranty. In such circumstances, plaintiff would be seeking an order to prevent a real and not merely hypothetical injury.[7] It is not clear to this panel whether the bank had communicated or indicated to plaintiff an intent to enforce the guaranty before or at the time plaintiff filed her complaint. Of course, we now know that the bank has filed a collections action against plaintiff in a separate suit. Given the default and probable collectability problems related to the companies, we surmise that the threat of the bank seeking to enforce the guaranty was always real and likely; therefore, we tend to believe that the trial court erred by determining that there was no actual controversy for purposes of declaratory relief under MCR 2.605. But we conclude that reversal is unwarranted because, as an alternate basis to affirm the court's summary dismissal of Count I, there was adequate consideration in support of the guaranty, and the guaranty was not unconscionable. See *Pegasus Wind, LLC v Tuscola Co*, 340 Mich App 715, 753; 988 NW2d 17 (2022) (an appellee need not file a cross-

---

[6] As compared to the guaranty, the $80,000 lost investment did constitute a past injury.

[7] This would be comparable to an insurance company filing a declaratory-judgment action regarding an accident after which an injured party claimed coverage under a policy issued by the insurer.

appeal in order to argue an alternative basis for affirming a trial court's ruling, even if that argument was considered and rejected by the court).

We do conclude that the trial court did not err by summarily dismissing Count IV regarding plaintiff's request for a declaration that the bank and LeFevre owed and breached a duty to plaintiff under 13 CFR 120.140(f). The issue of duty is inextricably intertwined with the silent fraud claim in Count III that we discuss below. "Duty" is not a stand-alone issue; rather, it is an element of a tort cause of action. See *In re Bradley Estate*, 494 Mich 367, 390; 835 NW2d 545 (2013). Simply answering or declaring that a duty existed would not, in and of itself, render the guaranty unenforceable. Therefore, there would be no guidance with respect to future conduct even if the court determined that a duty existed. And "breach" of the duty concerns past and not future conduct. We will return to the issue regarding whether 13 CFR 120.140(f) created a duty when we discuss Count III.

On the arguments of lack of consideration and unconscionability, we cannot help but note the procedural "awkwardness" of this case; it becomes glaring because those arguments or legal theories typically constitute defenses to a contract action, and MCR 2.116(C)(8) concerns the failure to state a claim. Those arguments or theories, however, were presented in the context of a count seeking declaratory relief. Thus, we conclude that plaintiff failed to state a "claim" for declaratory relief in relation to the allegations of unconscionability and lack of consideration.[8]

"A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) *legal consideration*, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015) (emphasis added). To establish legal consideration, there must be a bargained-for exchange, with a benefit on one side, or a detriment suffered, or service done on the other side. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016). Courts generally do not inquire into the adequacy or sufficiency of consideration. *Id.* Indeed, in legal estimation, a cent or a pepper corn would constitute valuable consideration. *Id.*

Plaintiff attached the guaranty as an exhibit to her complaint, and a written instrument attached to a complaint "is a part of the pleading for all purposes[,]" MCR 2.113(C)(2), which would necessarily include a motion for summary disposition under MCR 2.116(C)(8). The very first sentence of the guaranty begins with the language, "For good and valuable consideration . . . ." At the end of the guaranty, plaintiff acknowledged reading all of the provisions contained in the document and agreed to all the terms. Given plaintiff's contractual admission that her guaranty was in exchange for good and valuable consideration, one could argue that she is estopped from

---

[8] We appreciate that "[a]lthough it has become commonplace in this state for a plaintiff to assert a request for declaratory relief as a separately labeled cause of action within his or her complaint, this is technically improper because 'declaratory relief is a remedy, not a claim.' " *Wiggins v City of Burton*, 291 Mich App 532, 561; 805 NW2d 517 (2011) (citations omitted). Nevertheless, this Court has affirmed summary dismissal of requests for declaratory relief under MCR 2.116(C)(8). See, e.g., *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 440; 886 NW2d 445 (2015).

claiming an absence of consideration. See *Barron G Collier, Inc v Stebbins*, 236 Mich 147, 156; 210 NW 264 (1926) ("To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts.") (quotation marks and citations omitted). We do understand that the contractual language regarding "good and valuable consideration" could be viewed as boilerplate absent any true effect. See *Ungerleider v Gordon*, 214 F3d 1279, 1283 (CA 11, 2000).

Regardless, even without contemplating the "consideration" language in the guaranty, we conclude that the guaranty was supported by sufficient consideration. As alleged in the complaint, in exchange for the guaranty, the bank entered into the COT agreement, which deferred payment on the missed loan installments and staved off a full default and foreclosure on the lien-encumbered property for the time being in relation to companies that plaintiff was investing and obtaining an interest in. See *Stott v Stott*, 258 Mich 547, 552; 242 NW 747 (1932) (Consideration exists "if the promisee in return for a promise does anything legal which he is not bound to do or *refrains from doing anything which he has a right to do*, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.") (emphasis added). The fact that plaintiff allegedly had no idea about the COT agreement until after she executed the guaranty did not change the fact that the bank provided consideration for the guaranty.

Moving on to the issue of unconscionability, we note that only traditionally-recognized contract defenses can be invoked to avoid the enforcement of an unambiguous contract. These include the defenses of duress, waiver, estoppel, fraud, and unconscionability. *Rory v Continental Ins Co*, 473 Mich 457, 470 n 23; 703 NW2d 23 (2005). With respect to the defense of unconscionability, this Court in *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 30; 772 NW2d 801 (2009), observed:

> For a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not substantively unconscionable simply because it is foolish for one party or very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience. [Quotation marks and citations omitted.]

In viewing the allegations in plaintiff's complaint regarding unconscionability, and making the assumption that plaintiff was the weaker party, we find that there are no assertions that plaintiff had no reasonable alternative but to accept the terms contained in the guaranty. Accordingly, the complaint fails to allege procedural unconscionability. See *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 144; 706 NW2d 471 (2005) ("If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability.").

With respect to substantive unconscionability, plaintiff merely makes conclusory allegations in the complaint that the guaranty was one-sided, oppressive, and inequitable, without actually pointing to any particular language in the guaranty that is problematic and without

claiming that any provision shocks the conscience. The guaranty, which, again, is part of the pleading or complaint, does not contain any language that shocks the conscience; it is a standard personal guaranty. We note that plaintiff's allegations regarding unconscionability effectively concern claims of fraud, so we next address plaintiff's claim of silent fraud. In sum, for purposes of Counts I and IV, we conclude that plaintiff failed to state a "claim" for declaratory relief.

### 3. SILENT FRAUD

"Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). Our Supreme Court noted that "[t]hese doctrines include actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment." *Id.* A claim of fraudulent misrepresentation generally requires a showing that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bergen v Baker*, 264 Mich App 376, 382; 691 NW2d 770 (2004) (quotation marks and citations omitted).]

By contrast, under the doctrine of silent fraud, a cause of action can be maintained when there is a suppression of material facts, along with a legal or equitable duty to disclose those facts. *M & D, Inc v W B McConkey*, 231 Mich App 22, 35-36; 585 NW2d 33 (1998). Michigan has long recognized silent fraud, and courts have sustained recoveries when the truth has been suppressed with the intent to defraud because suppression of the truth can be just as prejudicial as that which arises from the assertion of a falsehood. *Titan Ins Co*, 491 Mich at 557. For purposes of silent fraud, a plaintiff must prove that the defendant knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions with the intent to deceive. *Roberts v Saffell*, 280 Mich App 397, 405; 760 NW2d 715 (2008). "A misrepresentation need not necessarily be words alone, but can be shown where the party, if duty-bound to disclose, intentionally suppresses material facts to create a false impression to the other party." *M & D, Inc*, 231 Mich App at 25. "Supreme Court precedent clearly indicates that, in order to prove a claim of silent fraud, a plaintiff must show that . . . there was a legal or equitable duty of disclosure." *Id.* at 32; see also *Titan Ins Co*, 491 Mich at 557 (the doctrine of silent fraud only arises when there exists a legal or equitable duty of disclosure); *Hord v Environmental Research Institute of Mich*, 463 Mich 399, 412; 617 NW2d 543 (2000) ("In order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure.") (quotation marks and citations

omitted).[9]  The threshold question whether a duty exists is an issue solely for the court to determine.  *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997).

In this case, the trial court summarily dismissed plaintiff's claim of silent fraud because defendants did not owe plaintiff a legal or equitable duty to divulge the truth regarding the financial plight of the two companies.  The court provided no elaboration on its ruling.

"[A] legal duty to make a disclosure will arise most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information."  *Hord*, 463 Mich at 412.  The duty to disclose generally applies in the context of fiduciary or comparable relationships, but there is no duty to disclose in an ordinary contract setting except when a party is responding to a specific inquiry.  See *Toering v Glupker*, 319 Mich 182, 187; 29 NW2d 277 (1947).  A duty can arise when there is a direct inquiry or when a particularized concern is expressed, and a misleadingly incomplete response to the inquiry or concern can establish silent fraud.  *Alfieri v Bertorelli*, 295 Mich App 189, 193-194; 813 NW2d 772 (2012).

We have carefully reviewed plaintiff's 39-page, 229-allegation complaint.  There are no allegations that would give rise to a conclusion that a fiduciary or fiduciary-like relationship existed between plaintiff and the bank or LeFevre.  There are also no allegations that plaintiff made an inquiry to LeFevre or any other bank employee or agent about the companies' financial circumstances or that plaintiff expressed a particularized concern about the financial strength of

---

[9] The elements of silent fraud are set forth in M Civ JI 128.02, which provides:

Plaintiff claims that defendant defrauded [ him / her / it ] by failing to disclose material facts. To establish this, plaintiff has the burden of proving by clear and convincing evidence:

(a) that defendant failed to disclose [ a material fact / material facts ] about [ insert subject matter of the claim ].

(b) that defendant had actual knowledge of the [ fact / facts ].

(c) that defendant's failure to disclose the [ fact / facts ] caused plaintiff to have a false impression.

(d) that when defendant failed to disclose the [ fact / facts ], defendant knew the failure would create a false impression.

(e) that when defendant failed to disclose the [ fact / facts ], defendant intended that plaintiff rely on the resulting false impression.

(f) that plaintiff relied on the false impression.

(g) that plaintiff was damaged as a result of [ his / her / its ] reliance.

-10-

the companies. Plaintiff asserts in her brief on appeal that she asked LeFevre about the financial health and viability of the companies; however, there are no such allegations in the complaint, and our focus is solely on the complaint given the principles attendant to a (C)(8) motion. Plaintiff did allege that she and LeFevre discussed the companies and that he "spoke very highly about the Companies." This allegation simply does not suffice to show that a legal or equitable duty to disclose was created in relation to a claim of silent fraud. Furthermore, the allegation is extremely vague, failing to specify whether LeFevre was speaking highly of the companies' financial affairs or other aspects of the catering business. We reject as too tenuous and speculative plaintiff's argument that one could reasonably infer from the allegation that plaintiff had made an inquiry about the companies' financial health to which LeFevre gave the response that he thought highly of the companies. Had plaintiff actually made such an inquiry, it defies logic that plaintiff would not have included the allegation in her extensive complaint—a complaint that was amended twice. We note that plaintiff did not allege a direct claim of fraudulent misrepresentation against defendants. And she does not request an opportunity to amend her complaint to add a claim of fraudulent misrepresentation. See MCR 2.116(I)(5).

Plaintiff argues that a legal duty was created by operation of 13 CFR 120.140(f), which provides that an associate of a lender providing an SBA loan "may not . . . [e]ngage in conduct reflecting a lack of business integrity or honesty[.]" In the context of a Michigan statute, this Court in *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 720; 965 NW2d 690 (2020), explained:

> The Legislature can create a duty by statute, but not every statute creates such a duty. To determine whether a statute creates a particular duty with respect to a particular party, courts generally consider two questions: (1) did the Legislature intend that the statute would prevent the type of injury and harm actually suffered by the party; and (2) did the Legislature intend that the party was within the class of persons protected by the statute? If the answers to both are yes, then a legal duty arises from the statutory enactment. [Citations omitted.]

Plaintiff relies on *Randall* in arguing that 13 CFR 120.140(f) created a duty that required LeFevre to honestly disclose to plaintiff before she executed the guaranty that the companies were in severe financial distress.

As argued by defendants, "[f]ederal regulations in and of themselves cannot create a private cause of action unless the action is at least implied from the applicable statute." *Dobronski v Transamerica Life Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360506); slip op at 9. And defendants contend that the Small Business Act contains no such provision. We note that in *Savini Constr Co v Crooks Bros Constr Co*, 540 F2d 1355, 1358-1359 (CA 9, 1974), the United States Court of Appeals for the Ninth Circuit held that a private cause of action for misrepresentation and lost profits could not be inferred from language in the Small Business Act. But plaintiff in this case is not arguing that 13 CFR 120.140(f) creates a cause of action; rather, she asserts that the federal regulation simply creates a legal duty that can be incorporated into a common-law claim of silent fraud.

Nevertheless, we reject plaintiff's argument because she has not convinced us that 13 CFR 120.140(f) governs lender conduct in relation to a person merely acting as a personal guarantor on

an SBA loan procured earlier by others for a business enterprise started by those other individuals. Plaintiff herself did not request and obtain an SBA loan. To the extent that the principles in *Randall* regarding the creation of a duty by statute apply equally to a federal regulation, we cannot conclude that 13 CFR 120.140(f) was promulgated with the intent to prevent the type of harm complained of by plaintiff, i.e., unjust liability under a personal guaranty, or that plaintiff, as a guarantor, was within the class of persons intended to be protected by the federal regulation. Therefore, assuming that 13 CFR 120.140(f) can potentially create a lender duty for purposes of a common-law claim of silent fraud, we conclude that the regulation did not apply to the communications and interactions between LeFevre and plaintiff regarding the personal guaranty.

Plaintiff further argues that general legal principles require a lender to notify a guarantor of any adverse facts at the outset of the transaction that would materially increase the guarantor's risk beyond that which the guarantor reasonably assumes. In support of this proposition, plaintiff relies on Restatement of Suretyship & Guarantee, 3d, § 12 (1996), which provides, in relevant part:

> (3) Subject to subsections (4) and (5), if, before the secondary obligation [(guaranty)] becomes binding, the obligee [(the bank)]:

> (a) knows facts unknown to the secondary obligor [(plaintiff)] that materially increase the risk beyond that which the obligee has reason to believe the secondary obligor intends to assume; and

> (b) has reason to believe that these facts are unknown to the secondary obligor; and

> (c) has a reasonable opportunity to communicate them to the secondary obligor;

> the obligee's nondisclosure of these facts to a secondary obligor constitutes a material misrepresentation.

Count III of plaintiff's complaint contains allegations sufficient to meet the elements of Restatement, § 12(3), which has not been adopted in Michigan. We, however, decline the invitation to adopt Restatement, § 12 because it would conflict with precedent issued by the Michigan Supreme Court. In our view, only our Supreme Court can entertain the issue regarding whether Restatement, § 12 should be adopted to carve out an exception under the existing common law with respect to the establishment of a duty for purposes of a claim of silent fraud. The Michigan Supreme Court has recognized a duty of disclosure in relation to a claim of silent fraud when there exists a fiduciary or fiduciary-like relationship or when a party has made a specific inquiry or expressed a particularized concern. See *Hord*, 463 Mich at 412; *Toering*, 319 Mich at 187; *M & D, Inc*, 231 Mich App at 29, 31 (review of Michigan Supreme Court precedent reveals that fraud by nondisclosure has only been recognized when a vendor responds to a specific inquiry or particularized concern). Indeed, in *First Nat'l Bank of Hancock v Johnson*, 133 Mich 700, 701-702; 95 NW 975 (1903), our Supreme Court held that a guarantor, who claimed fraud, had a continuing obligation on a promissory note even though the lender had not informed the guarantor of the primary borrower's worsening financial condition "when the renewals were signed."

Subsection (3) of Restatement, § 12 does not require a specific inquiry to be made or the expression of a particularized concern in order for a duty to arise. Accordingly, Restatement, § 12 can reasonably be characterized as being inconsistent with precedent issued by our Supreme Court. The Michigan Supreme Court has explained that the "Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded[.]" *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016). Therefore, we decline to adopt Restatement, § 12. Plaintiff is, of course, free to pursue the issue in an application for leave to appeal in our Supreme Court.

Finally, we find instructive a decision by the Tennessee Court of Appeals in *Walker v First State Bank*, 849 SW2d 337, 338-340 (Tenn App, 1992), in which the plaintiff pledgor, who executed a deed of trust and a promissory note securing the payment of her brother's debt, commenced a civil action against the defendant bank for, in part, fraudulent concealment premised on a failure to disclose her brother's true financial condition. The Tennessee court observed that the claim could only be sustained if there had been a fiduciary or fiduciary-like relationship between the plaintiff and the bank, which did not exist, or if the plaintiff had made an inquiry to the bank regarding her brother's financial circumstances, which did not occur. *Id.* at 341-342. The court commented:

> As we have already observed, plaintiff had numerous opportunities to inquire about the exact amounts and nature of her brother's debts. She could have inquired of her brother; she could have inquired of her first cousin, the bank's attorney; and she could have inquired of an officer of the bank. In representing the bank, its officer or attorney would have been under a duty to respond fully, fairly and accurately. At every turn, plaintiff chose not to inquire about any of the details of this transaction at any time. . . . [T]he bank was under no obligation to "hold her hand" throughout this extended transaction. [*Id.* at 342.]

In sum, we hold that the trial court in the instant case did not err by dismissing plaintiff's claim of silent fraud due to the absence of a legal or equitable duty to disclose the companies' dire financial circumstances.

## 4. CIVIL CONSPIRACY

With respect to plaintiff's claim of civil conspiracy, the trial court found that the issue had been abandoned because plaintiff failed to cite any supporting legal authority in responding to defendants' motion for summary disposition. The trial court further ruled that plaintiff failed to state a claim for civil conspiracy because there was no separate actionable or viable underlying tort.

Below, defendants, citing caselaw authority on the principles governing a claim of civil conspiracy, argued that plaintiff had failed to state a separate, actionable tort as necessary to support her claim of civil conspiracy. In response, plaintiff stated that "[t]he claim of civil conspiracy was properly pled." This was the full extent of plaintiff's response. We cannot conclude that the trial court erred by finding that plaintiff had abandoned the issue. Nevertheless, we briefly examine the trial court's substantive ruling.

A claim of civil conspiracy does not exist in the air; rather, the plaintiff must prove a separate, actionable tort. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003); *Early Detection Ctr, PC v New York Life Ins Co*, 157 Mich App 618, 632; 403 NW2d 830 (1986). It does appear that the trial court concluded that because the silent fraud claim failed, the claim for civil conspiracy necessarily failed. The problem with that reasoning is that LeFevre could have conspired to engage in fraudulent misrepresentation, which was a tort alleged against Gratz-Pierson. But even if the trial court erred in its reasoning, we still find that plaintiff failed to state a claim of civil conspiracy. "A civil conspiracy is a combination of two or more persons, *by some concerted action*, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992) (emphasis added). The allegations under the civil conspiracy count in the complaint are purely conclusory in nature and not fact driven. And an examination of the general allegations in the complaint reveals that none of the cited communications or actions involving LeFevre indicated that he was engaged in a *concerted* action with the non-bank defendants to commit fraudulent misrepresentation. Reversal is unwarranted.

## 5. RESPONDEAT SUPERIOR

As noted earlier, under the theory of respondeat superior, an employer may be held liable for an employee's negligent acts if the employee was acting within the scope of his or her employment. *Laster*, 316 Mich App at 734. Because we have ruled that there is no viable claim against LeFevre for silent fraud and civil conspiracy, the bank cannot be held vicariously liable. Accordingly, we conclude that the trial court did not err in dismissing the respondeat superior claim.

## III. CONCLUSION

We conclude that the trial court did not err by summarily dismissing plaintiff's claims of silent fraud, civil conspiracy, and respondeat superior, along with her requests for declaratory relief. Under MCR 2.116(C)(8), plaintiff failed to state a viable claim against defendants.

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ Christopher P. Yates

-14-